NO. 83-230

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

THE STATE OF MONTANA,

    Plaintiff and Respondent,

  -vs-

TIMOTHY E. DESS and RONALD E. HAAS,

    Defendants and Appellants.

_____

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

            John Keith, Great Falls (Dess)
            Ralph T. Randono, Great Falls, Montana (Haas)

    For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            J. Fred Bourdeau, County Attorney, Great Falls,
            Montana

_____

                    Submitted on Briefs:  November 3, 1983

                              Decided:  January 12, 1984

Filed: JAN 12 1984

*Ethel M. Harrison*
_____
                Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendants Timothy E. Dess (Dess) and Ronald E. Haas (Haas) appeal their convictions for felony theft by jury trial in the Eighth Judicial District Court, Cascade County. We affirm.

On September 7, 1982, a witness observed two ten-speed bicycles parked on the sidewalk, leaning against the window of a cafe. The bicycles had been left there earlier by two teenage girls who were inside the cafe. The witness heard a male voice yelling "steal the bikes." The voice came from the direction of the alley where the Driftwood Bar was located. The witness observed a young man, later identified as Travis Owens, and another man, later identified as defendant Haas, take the bikes and ride away. Both men rode off in the same direction, north towards Great Falls. They were followed by a white station wagon driven by a man later identified as defendant Dess, accompanied by a young woman later identified as Yvette Rambo. Yvette Rambo and Travis Owens testified that they had been in the Driftwood Bar with Dess and Haas. Susan Pettit, the owner of the bikes, reported the theft and described the bikes to the Cascade Marshal.

A local rancher, Chester Brown, was in the cafe with two other gentlemen when they heard about the theft and the involvement of a white station wagon. The three men drove northwest on their way out of town and noticed a white station wagon parked near the stockyards. As they approached the station wagon, it began to drive off. The men observed a red bicycle in the back of the car. Mr. Brown drove around the vehicle to stop it, and a conversation ensued between him and the three occupants of the car.

2

The driver, defendant Dess, seemed to be speaking on behalf of the occupants of the station wagon. When Mr. Brown asked about the bicycle, he was told that a hitchhiker left his bike in the car and then ran away. Defendant Dess said for the men to "take the bike and leave us alone." Eventually, the bike was put in Mr. Brown's truck and the two vehicles headed back into town.

About 200 yards down the road, another bike was lying in the ditch. Defendant Haas was near this bicycle. The second bicycle and Haas were picked up on the way back to town. The two vehicles were then taken into town to the city hall where the marshal was attending a meeting. Susan Pettit identified the bicycles as hers.

Susan Pettit stated that both of the bikes were used when she received them from her brothers. One bicycle was a red Schwinn Traveler, approximately two to three years old. The other bicycle was a purple or maroon Gamble's model, approximately four or five years old. The red Schwinn model would have cost $195.95 at the time it was purchased. The value of the bicycles is at issue on appeal.

Sherry Yeagley, part owner of the Isler's Keys and Cyclery, had two years of experience in buying and selling new and used bicycles. Based upon her examination of the bicycles, Ms. Yeagley considered the current market value of the red Schwinn to be $120-$125, and the current market value of the Gamble's bike to be $40-$60, if the person sold them, as is, independently of a dealer. She further stated she had sold two bikes similar to the Gamble's bike for $75.

Reed Jorgenson, manager of Coast-to-Coast Hardware in Great Falls, also testified as to the value of the bikes after he had examined them for the defense. Mr. Jorgenson had eleven years of experience at the hardware store and five

years nonprofessional experience repairing bicycles. His Coast-to-Coast store buys and sells used bikes. Mr. Jorgenson said that the Schwinn Traveler was in very marketable shape and needed a new seat, costing about $7, plus some basic adjustments in the cables. The Gamble's bicycle was not as marketable in his opinion, and it needed a little more adjustment than the Schwinn, plus a shift cable and handle bar tape.

After doing the repairs, he stated he could sell the Schwinn for $125 and the Gamble's for $60. If a person were to sell the bikes independently, he thought a "fair asking price" for the Schwinn was $75-$90, and for the Gamble's about $40, as is. When asked what value he would report if the bicycles were repaired and stolen from his store, he stated he would report $125 for the Schwinn and $60 for the Gamble's. He then testified:

> "But if they were sitting in our back room and they had not been fixed yet, I feel that I would still have to report what I would sell them for, because, you know, that's definitely what they are worth."

The jury was instructed according to the accountability statute, section 45-2-302, MCA with respect to defendant Dess.

The District Court denied a pre-trial motion for separate trials after hearing and filing of briefs. The jury was instructed that each defendant is entitled to have his guilt or innocence determined as if he were being tried separately.

Following a jury trial, the defendants Ronald Haas and Timothy Dess were convicted of the offense of felony theft under section 45-6-301(1)(a), MCA. This appeal follows.

The following issues are raised on appeal.

4

(1)  Whether the jury could rationally find that there was no reasonable doubt that the value of the stolen property exceeded $150?

(2)  Whether there was sufficient evidence upon which the jury could infer that Defendant Dess aided in the commission of the theft of the two bicycles?

(3)  Whether the trial court erred in denying Defendant Dess' motion for a separate trial?

(4)  Whether the prosecutor improperly commented on defendant's failure to testify during closing arguments?

At the time of the offense, Montana law distinguished felony theft from misdemeanor theft by the standard of a $150 valuation for the stolen property.  Section 45-6-301(5), MCA (1981).  Valuation for this purpose is the market value of the property.  State v. McComas (1931), 89 Mont. 187, 295 P.2d 1011.

Defendants argue that the evidence does not support a valuation in excess of $150 beyond a reasonable doubt.  We disagree.

This Court must determine whether there is substantial evidence supporting the conviction when the evidence is viewed in the light most favorable to the State.  State v. Austad (Mont. 1982), 641 P.2d 1373, 1389, 39 St.Rep. 356, 376; State v. Wilson (Mont. 1981), 631 P.2d 1273, 1278, 38 St.Rep. 1040, 1047.

In this case the jury was confronted with several values for the bicycles.  It is solely within the province of the jury to weigh these figures and consider the weight to be given to the testimony of each of the experts.  It is not unreasonable, given a well supported range of values of $115 to $185, that the jury should find the value to be in excess of $150.

5

Nor can we assume the jury failed to find that value beyond a reasonable doubt. The jury was separately instructed that, in addition to all the other elements of the crime, it must find "beyond a reasonable doubt that the bikes were of a value of more than $150.00" in order to convict defendants of felony theft.

Defendant Dess challenges the sufficiency of the evidence to support his conviction for aiding and abetting or joining with another in a common design or purpose. We find the following facts to be sufficient evidence, when viewed in a light most favorable to the State, to support an inference of both aiding and abetting, and joining in common design or purpose to commit the offense:

1. Dess was in the company of Haas and Owens immediately before the theft.

2. Dess was in his white station wagon at the time of the theft from where one could see the stealing of the bicycles.

3. A white station wagon was seen following the stolen bicycles.

4. Dess was found driving his white station wagon, with one of the bicycles in the back, stopped only 200 yards past the other bicycle.

There may be insufficient evidence to demonstrate that Dess exerted physical control over the bikes personally. Nevertheless, the jury would be warranted in inferring from these facts that Dess was actively participating in flight from the scene and/or promoting or participating in the entire plan or scheme.

Defendant Dess also complains that he was prejudiced by the District Court's failure to separate his trial from

6

defendant Haas'. Dess claims that Haas' testimony was "essential" to his defense.

In order to demonstrate prejudice by the failure to separate trials, a defendant must show that the co-defendant's testimony is exculpatory. Byrd v. Wainwright (5th Cir. 1970), 428 F.2d 1017. At the hearing on the motion for separate trials, no testimony was presented regarding what Haas might say that would be exculpatory. There was no showing that Haas' testimony would be any different from that of witness Owens.

On the other hand the expedition of the administration of justice, the conservation of judicial time, and the minimization of burdens for jurors and witnesses is well served by the joinder of the two defendants. State v. Strain (Mont. 1980), 618 P.2d 331, 337-338, 37 St.Rep. 1763, 1769.

Finally, defendant Dess argues that the prosecutor improperly commented on defendant's failure to testify by making the following statement during closing argument:

> "Now if this then is the theory, what evidence has been introduced for you to support this line of defense? And here is where the questions start to come. If you are to accept the defendant's theory of the case, you must accept naturally the defendant's testimony. In this case, that is the witnesses who testified for the defendants. That's the only way you can accept the defendants' theory, the only way is to buy what they said on the stand."

The test of the propriety of the prosecutor's comments is "whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Anderson (1970), 156 Mont. 122, 125, 476 P.2d 780, 782; State v. Armstrong (1976), 170 Mont. 256, 261, 552 P.2d 616, 619.

When read in the context of the prosecutor's argument, it is clear that the statement refers to the credibility of the defense witnesses. Even if the jury were to draw the remote inference regarding defendant's failure to testify, any prejudice would be well overcome by the following jury instruction:

> "You are instructed that a Defendant in a criminal proceeding need not testify and the jury is not permitted to draw any inference from his failure to do so. A juror would violate his oath of office if he would permit his judgment to be influenced by any inference he may draw from a Defendant's failure to testify."

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8